I think there ought to be a venire de novo upon the ground, simply, that the acts and declarations of the woman which were given in evidence are not of such a nature as can affect the prisoner. To make the acts and declarations of one person those of another, or to allow them to operate against another, it must appear that there was a common interest or purpose between them; as applied to the case before us, that there was a conspiracy to murder the deceased, (329) formed between his wife and the prisoner. But that is not all which ought to appear. Before the acts or declarations of one of the conspirators can be received against another it must be shown that they were acts done and declarations uttered in furtherance of the common design, or in execution of the conspiracy. They must be acts and declarations of the one that were authorized by the other, or such as became necessary in the prosecution of the joint business or criminal conspiracy. It has, indeed, been held in this State that the declarations of one of the parties, unless they accompany acts, so as to come within the rule of pais res gestae, can only be received against himself. S. v. Poll,8 N.C. 442. But, admitting that to be too strict a rule, no case has carried the doctrine further than has been just mentioned, that is, that the acts and declarations must be such as relate to the common business or purpose, and in furtherance of it. Now, this evidence does not appear to be of that character. I do not deem it material or, rather, so indispensable that the conspiracy should have established, in the *Page 232 
first instance, that the judgment should be reversed on that ground merely. Though that is the more natural, and convenient order of proof, it would be sufficient to support the conviction, if it was made to appear on the trial, so as to show that, on the whole, there was no prejudice to the justice due the prisoner. But supposing a conspiracy to murder the deceased to have been shown in this case: that does not seem to be any such connection between that conspiracy and the evidence given of the woman's act and declarations as conveys to the mind the slightest impression that they were in furtherance of the common purpose. If, for example, a conspiracy between these persons appeared for having the deceased murdered, and then Mary Meadows had procured another person to do the deed, that act of hers and any (330) instructions she gave for the mode of executing it might be evidence against the prisoner. But the evidence in this case was entirely of a different kind, being nothing more than naked indications of her personal hostility to her husband and of her intention to have great bodily harm done to him. It cannot be seen that those acts or declarations were calculated or designed to bring about the killing of her husband or in any manner furthered the common purpose between the prisoner and herself.
On this ground I think the judgment erroneous. I own that I am entirely of a different opinion from that of my brethren as to the consequences of the deficiencies in the bill of exceptions. It is to be recollected that this is a court of errors, and that every verdict and judgment prove to us their own correctness until the contrary appears. There is no case sent here, no report of evidence, on which we are to see all the facts set forth, that are legally sufficient to authorize the judgment given. But it lies upon the appellant to allege an error, and then to set forth, in his exceptions, such of the facts of the case as will show the opinion to which he objects to be erroneous in point of law. The bill of exceptions is the production of the appellant, and contains his words, with the signature and seal only of the judge to verify it. Thus looked at, it seems plain to me, when the prisoner's exception says that evidence was given to show a guilty connection between him and Mary Meadows that, in common fairness to the presiding judge and to the State, we must understand him to admit that it establishes the
guilty connection before spoken of in the exception, that is, one to murder Meadows. What other can be imagined in reference to this accusation? That, as it strikes me, must be the just interpretation of that expression, if it stood alone. But the conclusion is irresistible to my mind when the prisoner further states in his exception that he does not think it necessary to set out the evidence of that connection; (331) for what else can be inferred therefrom than that the evidence *Page 233 
legally established a guilty connection between the woman and himself, andthat it was such a guilty connection as was relevant to this trial and tothe question of evidence raised by him on the trial? I agree that the statements in the exception are very imperfect and unsatisfactory, such as would not enable us to see distinctly whether the decision was right or wrong. But whose fault is that? Very clearly, the prisoner's. It would have been much more correct to have stated in the exception, for example, what were the acts and declarations of Mary Meadows that were given in evidence, instead of saying merely that they were acts and declarations tending to show hostility; and so of the particular conspiracy alleged, and of that conspiracy (or connection, as it is called) which was proved. But the prisoner declined expressly to have that latter evidence set forth; and, surely, in a court of error he cannot complain that it was not stated, nor insist that, if stated, it would have proved merely a case of criminalconnection, or any other connection not relevant to the question then raised. The truth is that even the counsel at the bar, though the same who tried the cause in the Superior Court, did not suggest such an idea; but insisted only on the two points, that it was error to receive the evidence of Mrs. Meadows' acts and declarations, first, because they did not grow out of or concern the common purpose of the prisoner and herself, and, secondly, because they were admitted before the State had proved the conspiracy to kill the husband.
I think, if this were a civil action, no one would doubt that it was not a case for reversal merely because the appellant had not set forth the evidence given to show the kind and extent of the connection between those parties. He would be told that if he chose to keep that in the dark, the judgment could not be reversed, if there could be any guilty connections that would justify the admission of the evidence, because it was incumbent on him to show affirmatively an error. It is (332) the same in criminal, and even in capital cases; for the statute puts all cases upon the same footing, there being no means of bringing up any cause to this Court but by bill of exceptions and appeal thereon.
Supposing, then, the other point in the case to have been against the prisoner, I could not have united in reversing the judgment because the prisoner declined stating the evidence or used the vague expression, "guilty connection" — if, as the case stands, it can be considered vague. But upon the first ground I concur in reversing the judgment.
PER CURIAM. Venire de novo.
Cited: S. v. Dean, 35 N.C. 71; S. v. Dula, 61 N.C. 214; Hauser v.Tate, 85 N.C. 86; S. v. Turner, 119 N.C. 848; Henderson Co. v. Polk,149 N.C. 108. *Page 234 
(333)